IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

*FILED*

*JAN 28 2011*

*PATRICK E. DUFFY, CLERK*
*BY*
*DEPUTY CLERK, MISSOULA*

UNITED STATES OF AMERICA,

Plaintiff/Respondent,

vs.

STEVEN RAY RITCHIE,

Defendant/Movant.

Cause No. CR 07-67-M-DWM
CV 11-01-M-DWM

ORDER DENYING § 2255 MOTION
AND DENYING CERTIFICATE
OF APPEALABILITY

On January 3, 2011, Defendant/Movant Steven Ritchie ("Ritchie"), a federal prisoner proceeding pro se, filed a motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. Ritchie also filed an affidavit and supporting exhibits. On January 10, 2011, the United States was ordered to file a recording played at trial for the jury. It complied on January 14. On January 27, 2011, Ritchie filed a motion to compel the United States to file the correct and complete recording as played for the jury.

## I. Preliminary Screening

The motion is subject to preliminary review to determine whether "the motion and the files and records of the case conclusively show that the prisoner is entitled to

ORDER DENYING § 2255 MOTION AND DENYING COA / PAGE 1

no relief." 28 U.S.C. § 2255(b); see also Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts.

## II. The Recording

I remember what was played for the jury at trial. It was the recording that the United States filed on January 14, 2011. Ritchie's claim that the jury heard him say on the recording that the police told him where the guns were, Mot. to Compel Compliance (doc. 114) at 2, is false, as are his other claims in the motion.

## III. Background

In late December 2004, Ritchie became a suspect in a residential burglary in Ravalli County. Video surveillance footage from a local Wal-Mart showed Ritchie using a credit card stolen in the burglary. Ravalli County law enforcement officials obtained a warrant to search two places where Ritchie was believed to be living, a gym and the home of his ex-wife, Gina, at 1350 Country Road in Victor, Montana.

On December 30, 2004, the day officers intended to execute the search warrant, they received a 911 call to the home. Gina Ritchie had attempted suicide. Trial Tr. III at 288:20-289:23. After the medical emergency was resolved, the search warrant was executed. Four rifles were found in the basement. Knowing Ritchie was convicted of a felony in 1977, officers obtained a second warrant and seized the rifles. They later seized a handgun as well.

Ritchie was prosecuted on the burglary charge in state court and sentenced in August 2005. In March 2006, he was indicted in federal court on one count of being a felon in possession of a weapon, a violation of 18 U.S.C. § 922(g)(1). In September 2007, the indictment was dismissed without prejudice on speedy trial grounds. Order (doc. 67), <u>United States v. Ritchie</u>, No. CR 07-07-H-CCL (D. Mont. Sept. 10, 2007).

On October 3, 2007, a grand jury again indicted Ritchie under § 922(g). As in the original charge, the incident was alleged to have occurred "on or about" December 30, 2004, "and before."[1] Indictment (doc. 1) at 1-2. J. Mayo Ashley was appointed to represent Ritchie. Minutes (doc. 5); Order (doc. 9).

Trial commenced on February 11, 2008. The jurors knew that possession would be the key issue. <u>E.g.</u>, Trial Tr. I (doc. 96) at 32:10-33:19, 38:13-39:4, 41:6-18, 61:13-24, 67:19-70:13, 78:15-79:6 (voir dire); Trial Tr. II (doc. 97) at 155:4-10 (opening statement).

The officer who conducted the search at 1350 Country Road testified that three

---

[1] There was extensive discussion at trial about the time period alleged in the Indictment. Trial Tr. I at 5:18-7:2; Trial Tr. II at 180:16-182:19, 185:17-188:3, 221:22-225:8, 241:24-245:24, 247:11-248:15, 261:16-19, 268:21-269:17; Trial Tr. III at 286:9-287:9. That discussion, however, related to a photograph taken during the search; it showed a photograph of Ritchie holding a firearm in the interior of the home at 1350 Country Road. The snapshot, offered as Gov't Ex. 12, was not admitted into evidence. The time period of the Indictment is again a concern in Ritchie's § 2255 motion, but his arguments focus on three witnesses' testimony about his activities in the spring and summer of 2004, not on the photograph.

ORDER DENYING § 2255 MOTION AND DENYING COA / PAGE 3

rifles were found in the basement in a closet under the stairs. One was next to a desk in another area of the basement. Trial Tr. II at 171:18-20, 174:19-22, 174:24-175:5. None of the doors in or to the basement were locked. Id. at 175:12-22; Trial Tr. III at 327:20-329:18. At the top of the stairs leading from the house down to the basement, there was no door. Trial Tr. II at 188:4-16. Ammunition for the .280 as well as .22-caliber ammunition was found on the desk. Id. at 177:2-179:18.

Two of Ritchie's neighbors, Stanton and Schram, testified at trial. Stanton said he saw Ritchie firing guns off the back porch of the house at 1350 Country Road in the summer of 2004. Trial Tr. II at 191:7-195:13. Schram testified that he met a man who introduced himself as Steven Ritchie one day in June 2004, four years before trial, along with two other men. Schram was tending his parents' cows and responded to hearing shots fired near their property. He did not see Ritchie holding a gun, but he and Ritchie talked about shooting, and Schram recalled Ritchie saying he had a good gun for shooting gophers. He could not identify Ritchie at trial. Id. at 201:13-206:1. There was testimony that Ritchie's appearance had changed. Id. at 225:9-19, 234:15-18, 265:17-266:6.

Timothy Scott testified that Ritchie and his ex-wife, Gina, lived at 1350 Country Road with three children and another man, Manuel Gamma, from around 2002 to December 2004. He said he saw them "maybe twice a week," Trial Tr. II at

ORDER DENYING § 2255 MOTION AND DENYING COA / PAGE 4

209:2-211:16, 225:20-226:5, though Ritchie took occasional trips to California in the summer of 2004, id. at 235:4-23. Scott said the guns were kept in the basement, "next to a rolltop desk." He also said he shot gophers with Ritchie when the weather was nice, in the "summer months." Id. at 211:17-214:9. He said he never knew of any doors being locked and was not aware that any part of the house was "off limits" to Ritchie. He never saw Gina with firearms and never talked with her about them. Id. at 221:2-21.

Ritchie was arrested at the time the first search warrant was executed. Trial Tr. II at 164:10-13. His telephone calls from the Ravalli County Detention Center were monitored, and he was advised of that fact. Id. at 164:25-165:4, 167:21-168:4. On December 31, the day after his arrest, Ritchie called the house at 1350 Country Road. Scott was there, "picking up clothes and things needed by [Ritchie's] children," because he was taking care of them while Gina was in the hospital and Ritchie was in jail. Scott answered the phone. Id. at 217:5-15.

While the call was being recorded, Ritchie told Scott to go to the basement to see whether the guns had been taken. Ritchie said, "Can they take them guns and put 'em on me? 'Cause Gina had 'em locked in the basement, and I'm an ex-felon. If I have access to 'em, it means that, it's like me being me in c—, uh, having, uh, access

to a firearm, which is a felony too." Gov't Ex. 14 (doc. 113).[2] Throughout the call, Ritchie referred to the guns as Gina's. He told Scott where in the basement to look for the rifles and directed him to "lay on your back and look under the pool table," Gov't Ex. 14, to find a gun "tucked up into one of the legs of the pool table." Trial Tr. II at 217:18-20. Scott said "Is this the .22?" Ritchie responded "Yeah," and Scott replied, "Yeah, they were lookin' for this." Ritchie distinguished that gun, a revolver, from the "rifles" that Scott said had been taken in the search. Gov't Ex. 14. When Scott reminded him the call was being recorded, Ritchie said "Oh I know, but you know what? I know what Gina had and I — I — she locked that door all the time. She never let me down there. . . . So, uh, what I'm saying is . . . is . . . uh, she always bought guns for herself and never let me get to 'em." Gov't Ex. 14.   Scott told Ritchie he would hide the .22, id., but instead, he took it to Detective Burlinghame, Trial Tr. II at 163:15-164:2, 217:16-218:7, 220:17-221:1.  The recorded call was played for the jury. Id. at 219:20.

When Ritchie was released from jail, he went to Scott's house and recorded a conversation with him.  Gina later showed Scott a purported transcript of the

---

[2]  The recording is retained on compact disc in the Clerk's custody.  A transcript is available in the electronic record (doc. 113-1). The quotation here is what the Court hears on the CD.  It is not identical to the transcript in the electronic record, but the differences are minor.

recording, but, according to Scott, that transcript was handwritten by Ritchie and was not accurate. Ashley attempted to cross-examine Scott using a typed version of the transcript, but Scott denied its accuracy and denied making statements purportedly transcribed from the recording. Ritchie did not introduce the recording itself. Id. at 231:13-234:3, 236:17-238:8.

Ritchie testified. He said he was "in divorce court" in California from April 2004 until he returned to Montana for a visit on December 20, 2004, working on selling a house and settling property with his ex-wife (not Gina). When he was in Montana, from October 2003 to April 2004, he lived at a gym Gina owned in Hamilton and at a residence in Corvallis, occasionally visiting the house on Country Road to visit his children. He said he knew the firearms "were there at one time," but not on December 30, 2004, and that he "never" fired the weapons because he is a felon. Trial Tr. II at 252:9-257:24. He said Schram was mistaken and Scott was "just purely lying." Id. at 263:2-19. He said Stanton may have seen him shooting off M80's and firecrackers and perhaps a starter pistol from the back deck of the house on Country Road, and mistaken those items for firearms, but he also said Stanton was "more than mistaken" because "I wasn't even here" in Montana in the spring and summer of 2004. Id. at 256:16-257:1, 263:6-12.

Gina Ritchie also testified for the defense. She said Ritchie was living at the

ORDER DENYING § 2255 MOTION AND DENYING COA / PAGE 7

gym and in his truck, a black Ford 150. Trial Tr. III at 313:22-314:7. She was not asked, but her testimony did not suggest he never came to her house from April through December 2004. E.g., id. at 310:2-25, 313:18-314:7, 323:10-18.

Gina said all the seized weapons belonged to her and her brother, Duane Kirkland,[3] id. at 311:1-7, though Ritchie had access to them when he was in the house, id. at 311:16-18. She kept them in an unfinished crawl space,[4] id. at 316:9-317:16, and locked the doors at both the top and the bottom of the stairs, as well as the outside door, id. at 317:16-318:11, to protect the kids, id. at 311:8-15. When she was asked where she kept the ammunition, there was a long pause. Then she said "[i]t would be downstairs. I'm sorry it took me so long to answer, I just, um – I just found some more, so – just recently, so I'm like kind of one of those airhead type people." Id. at 319:4-7. She eventually said the ammunition was locked away in the desk drawer. Id. at 319:8-21.

Gina knew very little about the guns. She said she had them because she "liked shooting ground gophers," id. at 315:11, but later, when asked if she hit any, she said, "I think so, and I felt bad and I cried," id. at 321:4-7. She explained that she bought

---

[3] Kirkland was subpoenaed by both parties but did not appear. Trial Tr. II at 239:23-241:10.

[4] The crawl space was not the same place as the closet where the guns were found. Trial Tr. III at 315:18-317:16.

guns because she "inherited some money, from a family inheritance" and "kind of went on this little selfish streak and thought I can pretty much buy whatever I wanted." Id. at 314:16-21. She also said she inherited one of the guns. Id. at 322:11-14. Asked whether she bought ammunition, she said yes, though she did not know the caliber of the firearms she owned and used. Id. at 315:15-17, 318:25-319:1. She said the revolver "definitely belongs to me," id. at 320:19-23, but she said it was kept in the locked crawl space, id. at 322:15-17, not tucked up into one of the legs of the pool table. Gina did not say that she ever told Ritchie, between December 20 and December 31, 2004, where the firearms were located. Nor did Ritchie say that when he testified.

On rebuttal, Detective Burlinghame testified that he executed a search warrant on December 30, 2004, at the gym where Ritchie and Gina said Ritchie was living, but he found no indication that anyone was living there. Trial Tr. III at 325:21-327:3. The night before the searches, Burlinghame saw Ritchie's truck parked outside the house at 1350 Country Road, hooked up to a trailer. Id. at 327:4-19. He was the first officer inside the residence on December 30. None of the doors in the house were locked. Id. at 328:15-329:18.

On February 12, 2008, the jury found Ritchie guilty. Verdict (doc. 42). On July 23, 2008, he was sentenced to serve 120 months in prison, with 24 of those

months to run concurrently with his state sentence and 96 months consecutive, to be followed by a three-year term of supervised release. Minutes (doc. 73); Judgment (doc. 74) at 2-3; 18 U.S.C. § 924(a)(2).

Ritchie appealed. He argued that his speedy trial rights were violated, that his motion for mistrial should have been granted, and that his rights under the Second Amendment were violated. On January 15, 2010, his arguments were rejected and the conviction was affirmed. Mem. (doc. 108) at 3, United States v. Ritchie, No. 08-30275 (9th Cir. Jan. 15, 2010) (unpublished mem. disp.).

Ritchie timely filed his § 2255 motion on January 2, 2011. 28 U.S.C. § 2255(f)(1); Clay v. United States, 537 U.S. 522, 532 (2003).

## IV. Ritchie's Allegations

Ritchie alleges newly discovered evidence of innocence, ineffective assistance of counsel, "[f]atal variance of the indictment," a speedy trial violation, prosecutorial misconduct, and error in various rulings at trial. As to each of his claims, Ritchie also contends that appellate counsel was ineffective for failing to raise the issue on appeal. Mot. § 2255 (doc. 110) at 6 ¶ 15.

## V. Analysis

### A. Claims Regarding California Alibi Witnesses and Gina's Receipts

Ritchie points to "newly discovered evidence," meaning evidence he has newly

produced, showing that he was living in California, not Montana, in the spring and summer of 2004, and that Gina did not acquire some of the firearms until October 2004. See Mot. § 2255 at 10-35.[5]

First, the proffered evidence is not newly discovered. Second, the alibi affidavits do not rule out Ritchie's presence in Montana in the summer of 2004. For example, Paul Cox says Ritchie left "the house in Fair Oaks . . . . only to visit family, until August. That[']s when he went to Sturgis, South Dakota[,] for a few weeks." Cox. Aff. (doc. 110-3 at 20). Ritchie could have been in Montana during part of the time he was thought to be in South Dakota, e.g., Trial Tr. II at 194:25-195:13, and Scott testified that he and Ritchie shot gophers often, not just in the spring and summer of 2004. Trial Tr. II 210:6-8, 212:9-214:3.

Third, there is no reasonable probability[6] that Ritchie would have been

-------------------

[5] The pages of the form motion and Ritchie's brief in support are numbered continuously in the electronic record. Page 1 of Ritchie's brief is not numbered. The second page is numbered at the bottom of the page as page 1. This Order uses page numbers of the electronic record. The first page of Ritchie's brief is page 7 of the § 2255 motion, page 1 of the brief is page 8, page 2 of the brief is page 9, and so forth.

[6] Generally, prejudice on a § 2255 claim is shown if the error had a "substantial and injurious effect on the verdict." Brecht v. Abrahamson, 507 U.S. 619, 631 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). Ritchie also claims ineffective assistance of trial and appellate counsel. The more lenient standard – that is, a reasonable probability that the result would have been different, Strickalnd v. Washington, 466 U.S. 668, 694 (1984) – is used here.

ORDER DENYING § 2255 MOTION AND DENYING COA / PAGE 11

acquitted even if the jury believed both (1) that he was not in Montana in the spring and summer of 2004 and (2) that Gina did not have any of the weapons listed in the indictment at that time. The United States' theory of the case was corroborated by Stanton, Schram, and Scott and by Gina's limited knowledge about the firearms,[7] but the critical evidence was Ritchie's recorded phone call.

A defendant's own words are compelling evidence. They need not be taken to mean what the defendant says they mean. Based solely on Ritchie's own words in that call – the day after his arrest and the seizure of the firearms – the jury could reasonably have found that Ritchie was concerned about the firearms precisely because he had access to them despite his status as a felon. That is what he said. Gov't Ex. 14. He knew where the guns were. Id.; Trial Tr. II at 173:16-175:8. Gina did not. Trial Tr. III at 316:6-317:16.

If Ritchie never touched the guns that were locked away from his access in the basement he was not allowed to enter, then he had no reason to be concerned that anyone would claim he had access to them, and he would not have needed to ask Scott to hide them from the police. After all, at the time Ritchie made the call, he could not have known that Scott would, as Ritchie later claimed, lie about having

---

[7] For the inconsistencies between Gina's testimony and the other evidence in the case, see generally Trial Tr. at 344:2-345:1, 357:8-13, 357:19-358:4 (AUSA closing argument).

ORDER DENYING § 2255 MOTION AND DENYING COA / PAGE 12

seen Ritchie fire them.   Nor could he have known that two neighbors would "mistakenly" testify to the same thing.  Finally, Ritchie did not testify at trial that Gina told him, at any point between December 20 and the recorded call on December 31, where the firearms were.[8]  Neither did Gina.

All claims predicated on the California alibi witnesses and the gun receipts, Mot. § 2255 at 10-35, are denied.

### B. Variance

Ritchie claims he was unfairly caught between the Indictment's allegation that the crime occurred "on or about December 30, 2004, and before," and the unexpected testimony of Scott and Stanton that they saw Ritchie firing guns in the spring and summer of 2004.  He claims they said in police interviews that they saw him firing guns two or three weeks before his arrest.  Mot. § 2255 at 36.

A variance occurs where "the indictment and the proof involve only a single, though materially different, set of facts." United States v. Adamson, 291 F.3d 606, 615 (9th Cir. 2002).  The Indictment alleged:

---

[8] Ritchie testified that Gina told him, on an unspecified occasion, where in the house she put the firearms. He also said he spoke with Gina on the phone from jail. Trial Tr. II at 263:20-265:4. He did not say Gina told him in a phone conversation between December 30 and 31, 2004, where the guns were. Gina also testified that all the guns were locked in the crawl space, not where Ritchie correctly said they were. And, despite the monitoring of Ritchie's calls, Trial Tr. at 164:19-165:4, no relevant calls between Ritchie and Gina were introduced at trial.

That on or about December 30, 2004, and before, at Victor, in the State and District of Montana, the defendant, STEVEN RAY RITCHIE, *aka Steven Ray Cox*, having been convicted on March 24, 1977, of a crime punishable by imprisonment for a term exceeding one year under the laws of the State of California, did knowingly possess, in and affecting interstate or foreign commerce, a firearm, being any one or all of he following described firearms:

- a Remington .280 caliber rifle, serial number N3099,
- a Remington .22 caliber rifle, serial number 2726831,
- a Marlin .22 caliber rifle, model 60, serial number 98447113,
- a Springfield .22 caliber rifle, model 87A (no serial number found), and
- a Heritage MFG .22 caliber revolver, model Rough Rider, serial number HZ 36425,[9]

in violation of 18 U.S.C. § 922(g)(1).

Indictment (doc. 1) at 1-2.

These are the facts proven at trial. There was no variance. The pretrial statements are not relevant to variance. Moreover, as explained above, testimony about Ritchie's activities in the spring and summer of 2004 simply was not as important as Ritchie's own words in the phone call to Scott.

Ritchie might have a reason to complain if the jury's conviction could have rested solely on the testimony tending to show that he fired guns sometime between 2002 and the spring or summer of 2004, too long before the time period alleged in the Indictment. E.g., Mot. § 2255 at 42. But the jury's verdict and instructions, Trial Tr.

---

[9] The serial number was 33054. The number HZ 36425 was "another number on the bottom of the cylinder housing." Trial Tr. II 163:15-21.

III at 337:1-7; Jury Instruction (doc. 41) No. 14, "establish[] that [Ritchie] was convicted of possessing the [firearms] 'on a date reasonably near'" December 30, 2004, thus "tak[ing] [Ritchie's] conduct . . . months before" that date "out of the case." United States v. Casterline, 103 F.3d 76, 78 (9th Cir. 1996). The spring and summer of 2004, to say nothing of dates before that, did not occur "on or reasonably near" December 30, 2004.

Despite the instruction and the reasoning of Casterline, there might still be prejudicial error if one or more jurors could have found Ritchie possessed firearms in the summer of 2004 but not on December 30, 2004. A further jury instruction and the nature of the proof at trial, taken together, defeat that possibility. The jury asked, "Is this a case of constructive possession or real physical possession or both or either?" Jury Notes (doc. 43) at 4. The parties agreed, Trial Tr. III at 367:5-376:16, to instruct the jury:

> You are to decide the facts. Depending on the facts you find, the theory of possession could be actual, it could be constructive, it could be neither. However, if you find that the defendant was in possession of firearms as the indictment charges, all twelve of you must unanimously agree that the government proved beyond a reasonable doubt the facts that support the theory of possession, actual or constructive, on which your verdict is based.

Id. at 376:2-9; see also Supp. Jury Instruction S-3 (doc. 44 at 3).

In Casterline, there was *no* possibility that Casterline possessed the weapons

ORDER DENYING § 2255 MOTION AND DENYING COA / PAGE 15

on a date reasonably near the one named in the Indictment.   103 F.3d at 78-79.

Ritchie's case is different. A reasonable juror could have found he possessed firearms in the summer of 2004 and on December 30, 2004. A reasonable juror could have found that he possessed firearms on December 30, 2004, but not the previous summer. A reasonable juror could have found that he possessed firearms neither in the summer of 2004 nor on December 30, 2004. But no reasonable juror could have found Ritchie possessed one or more of the firearms named in the Indictment in the summer of 2004 but not on December 30, 2004. No evidence suggested he would have less access to the firearms on December 30 than he had in the summer of 2004. It is not realistic to suppose that Ritchie was convicted solely because the jury believed he shot gophers in the spring and summer of 2004. This claim, Mot. § 2255 at 36-49, is denied.

### C. Speedy Trial

The Court of Appeals rejected Ritchie's claim of a speedy trial violation, including his claim that it was error to dismiss the first indictment without prejudice. Mem. at 2-3, Ritchie, No. 08-30275. That is the law of the case. Ritchie suggests no reason to deviate from it. United States v. Alexander, 106 F.3d 874, 876 (9th Cir. 1997). "Issues disposed of on a previous direct appeal are not reviewable in a subsequent § 2255 proceeding." United States v. Currie, 589 F.2d 993, 995 (9th Cir. 1979) (citing cases); see also United States v. Redd, 759 F.2d 699, 701 (9th Cir.

ORDER DENYING § 2255 MOTION AND DENYING COA / PAGE 16

1985); <u>United States v. Scrivner</u>, 189 F.3d 825, 828 n.1 (9th Cir. 1999) (noting that "relitigation bar" precludes reconsideration in § 2255 proceeding of claims raised and adjudicated on direct appeal). Because the claim was rejected, Ritchie also cannot meet the prejudice prong of the <u>Strickland</u> test, 466 U.S. at 694. Ritchie's speedy trial claim, Mot. § 2255 at 50-53, is denied.

**D. Prosecutorial Misconduct**

Ritchie suggests the United States knew, before it indicted him, that Scott, Stanton, and Schram would testify to seeing Ritchie fire guns in the summer of 2004, "yet failed to give notice of these witnesses['] intended testimony, which not only changed the indictment[']s charging date, but basically, deprived Mr. Ritchie of the opportunity to prepare a defense." Mot. § 2255 at 54. Again, testimony about what happened in the spring and summer of 2004 was not as important as Ritchie believes. The Indictment plainly alleged possession on or about December 30, 2004, and that is what Ritchie was convicted of. This claim is denied.

Ritchie claims Detective Burlinghame knew he was in California in June 2004 because Burlinghame called Ritchie in California. Answering the phone at a California number on one day in June 2004 does not establish physical presence in California for the month of June 2004. <u>Id.</u> This claim is denied as frivolous.

Ritchie also claims that he was unable to prepare a defense because, at trial, the

witnesses said they saw Ritchie with firearms in the spring and summer of 2004, whereas they had told police they saw him with firearms two or three weeks before December 30, 2004. Mot. § 2255 at 55. A witness's trial testimony frequently differs from his statements to police – there is nothing suspicious about that[10] – and Ritchie simply was not prejudiced by the discrepancy to the extent he believes he was. This claim, Mot. § 2255 at 54-58, is denied.

### E. Error in Trial Rulings

Ritchie claims a "more clarifying instruction" should have been given in response to the jurors' question about the theory of possession, see supra at 15-16; that the given instruction "supported an unlawful amendment to the indictment[']s charging date"; that the evidence was insufficient to support his conviction; and that a limiting instruction should have been given "as to the prior acts of possession presented as evidence," Mot. § 2255 at 59.

The evidence plainly was sufficient to support the conviction. See supra at 5-11. Ritchie worries that the jury convicted him based on finding that he physically possessed firearms "before August 22, 2004," Mot. § 2255 at 63-64, but that date

---

[10] Ritchie says, "The prosecution[']s statement in opening to jury was that, his witnesses were going to surprise everyone with testimony that they observed Mr. Ritchie 'possess or shoot guns month's [sic] before' the December 30, 2004, arresting date." Mot. § 2255 at 58. The prosecutor did not say anything about surprising everyone. Trial Tr. II at 155:21-156:19.

ORDER DENYING § 2255 MOTION AND DENYING COA / PAGE 18

arose in connection with the calculation of his criminal history under the advisory sentencing guidelines. It was not a description of the basis of his conviction. <u>See</u> First Sentencing Tr. (doc. 99) at 14:17-20, 16:3-24.[11] Ritchie's other claims arise, again, from his contention that the jury's verdict could have been based solely on the testimony about his activities in the spring and summer of 2004. The contention lacks merit. These claims, Mot. § 2255 at 59-67, are denied.

## VI. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings.

### A. Governing Law

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are

---

[11] The first sentencing hearing was vacated to allow the parties to address their concerns about relevant conduct and Ritchie's criminal history. Minutes (doc. 57).

adequate to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003) (citing <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)).

### B. Discussion

Reasonable jurists could disagree about the wisdom of the Indictment's language "on or about December 30, 2004, and before," but reasonable jurists could not find any violation of Ritchie's substantial rights in this case. Ritchie's own voice on the recorded phone call to his home on December 31, 2004, was the key to his conviction. Testimony from three witnesses who each said they saw Ritchie with weapons or spoke with him about shooting in the summer of 2004 corroborated the United States' theory that Ritchie possessed the firearms on or about December 30. Nonetheless, given all the evidence in the case, it is not realistic to suppose that Ritchie was convicted because the jury believed only that he physically possessed weapons in the summer of 2004. He was convicted because the recorded phone call showed that he knew exactly where all the weapons were and because, based on her trial testimony, the person to whom he said they belonged did not.

Except for Ritchie's speedy trial claim, which was decided against him on direct appeal, all of his claims rely on the proposition that he was fatally prejudiced by evidence concerning his activities in the summer of 2004. He simply mistakes the significance of that evidence. He has not made a showing with any substance to it

ORDER DENYING § 2255 MOTION AND DENYING COA / PAGE 20

that his constitutional rights were violated.  There is no reason to encourage further proceedings.  A certificate of appealability is not warranted.

Accordingly, IT IS HEREBY ORDERED as follows:

1.  Ritchie's motion to compel compliance (doc. 114) is DENIED;

2.  Ritchie's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (doc. 110) is DENIED;

3.  A certificate of appealability is DENIED.  The Clerk of Court shall immediately process the appeal if Ritchie files a Notice of Appeal;

4.  The Clerk of Court shall ensure that all pending motions in this case and in CV 11-01-M-DWM are terminated and shall close the civil file by entering judgment in favor of the United States and against Ritchie.

DATED this _23rd_ day of January, 2011.

Donald W. Molloy
United States District Court

ORDER  DENYING § 2255 MOTION AND DENYING COA / PAGE 21